DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

THOMAS R. GREEN (CABN 203480)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, CA 94612
    Telephone: (510) 637-3695
    Fax: (510) 637-3724
    E-Mail: Thomas.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 18-0561 YGR |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Sentencing Date: October 10, 2019 |
| MARLON RAFAEL PEREZ-HERRERA, | Judge: Hon. Yvonne Gonzalez Rogers |
| Defendant. | |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1
II. FACTUAL AND PROCEDURAL BACKGROUND................................................... 1
III. SENTENCING GUIDELINES CALCULATIONS ..................................................... 2
IV. LEGAL ARGUMENT REGARDING DEFENDANT'S OFFENSE LEVEL ............. 2
    A. Defendant Possessed and Sold Multiple Firearms that Compel a Base Offense Level of 18 Pursuant to U.S.S.G. §2K2.1(a)(5). ................................................. 2
        1. The Glock pistol and auto switch defendant sold together on October 29, 2018 constitute a firearm described in 26 U.S.C. § 5845(a). ........................... 3
        2. The seven auto switches defendant possessed also meet the definition of "a firearm described in 26 U.S.C. § 5845(a)." ................................................... 6
            (i) Defendant's interpretation of U.S.S.G. §2K2.1(a)(5) is inconsistent with the language and structure of the Guidelines. ................. 6
            (ii) The defendant's interpretation of U.S.S.G. §2K2.1(a)(5) is also inconsistent with Congress's intent. .......................................................... 10
        3. The defendant's Palmetto State Armory model PA-15 also meets the definition of "a firearm described in 26 U.S.C. § 5845(a)." ................................. 10
    B. Defendant's Offense Conduct Warrants an Enhancement for Trafficking Pursuant to U.S.S.G. §2K2.1(b)(5). .............................................................................. 12
V. STATUTORY SENTENCING FACTORS................................................................ 13
    A. Nature and Circumstances of the Offense ..................................................... 13
    B. History and Characteristics of the Defendant ................................................ 14
    C. Need to Reflect the Seriousness of the Offense and Deterrence of Criminal Conduct. ........................................................................................................... 14
    D. Need to Protect the Public............................................................................... 14
VI. CONCLUSION AND SENTENCING RECOMMENDATION ................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Burgess v. U.S.*, 128 S.Ct. 1572 (2008) ............................................................................... 7, 8

*Chevron*, 467 U.S. .................................................................................................................. 11

*Colautti v. Franklin*, 439 U.S. 379 (1979) ............................................................................... 8

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ...................................................................... 7

*U.S. Endicott*, 803 F.2d 506 (9th Cir. 1986) ........................................................................... 5

*U.S. v. Bryant*, 1997 WL 745828 (4th Cir. 1997) ................................................................... 9

*U.S. v. Carmouche*, 138 F.3d 1014 (5th Cir. 1998) ................................................................ 9

*U.S. v. Cruz-Gramajo*, 570 F.3d 1162 (9th Cir. 2009) ........................................................... 6

*U.S. v. Evans*, 712 F.Supp. 1435 ............................................................................................ 4

*U.S. v. Fry*, 51 F.3d 543 (5th Cir. 1995) ................................................................................. 9

*U.S. v. Goff*, 677 F.Supp. 1526 (D. Utah 1987) ...................................................................... 4

*U.S. v. Griley*, 814 F.2d 967 (4th Cir. 1987) .......................................................................... 4

*U.S. v. Kent*, 175 F. 3d 870 (11th Cir. 1999) .......................................................................... 5

*U.S. v. King*, 2004 WL 2453221 (9th Cir. 2004) ............................................................... 5, 12

*U.S. v. Kwan*, 2008 WL 4946277 (9th Cir. 2008) ................................................................. 12

*U.S. v. Luce*, 726 F. 2d 47 (1st Cir. 1984) .............................................................................. 5

*U.S. v. Mead Corp.*, 533 U.S. 218 (2001) ......................................................................... 11, 12

*U.S. v. Saavedra*, 523 F.3d 1287 (10th Cir. 2008) ................................................................. 9

*U.S. v. Santillan*, 458 Fed. Appx. 253 (4th Cir. 2011) ........................................................... 9

*U.S. v. Schuhmann*, 1992 WL 107050 (9th Cir. 1992) ......................................................... 12

*U.S. v. Woods*, 560 F.2d 660 (5th Cir. 1977) ......................................................................... 5

*U.S. v. Youssef*, 547 F.3d 1090 (9th Cir. 2008) ...................................................................... 7

*U.S. v. Zeidman*, 444 F.2d 1051 (7th Cir. 1971) .................................................................... 5

*United States v. Francis*, 891 F.3d 888 (2018) ..................................................................... 12

*Williams v. Taylor*, 529 U.S. 420 (2000) ................................................................................ 6

| | | |
|---|---|---|
| 1 | **Statutes** | |
| 2 | 18 U.S.C. § 921(a)(3) | passim |
| 3 | 18 U.S.C. § 922(o) | 1, 10 |
| 4 | 18 U.S.C. § 922(a)(1) | 1 |
| 5 | 21 U.S.C. § 802(13) | 7, 8 |
| 6 | 21 U.S.C. § 802(44) | 7, 8 |
| 7 | 26 U.S.C. Chapter 53 | 11 |
| 8 | 26 U.S.C. § 5841 | 5 |
| 9 | 26 U.S.C. § 5845 | 3 |
| 10 | 26 U.S.C. § 5845(a) | passim |
| 11 | 26 U.S.C. § 5845(a)(3) | 11 |
| 12 | 26 U.S.C. § 5845(b) | 3, 4, 5, 6, 10 |
| 13 | 26 U.S.C. § 5845(c) | 12 |
| 14 | 28 U.S.C. § 599(a) | 11 |
| 15 | U.S.C. § 921(a)(3) | 5, 6 |
| 16 | **Rules** | |
| 17 | U.S.S.G. §2K2.1 | 6, 7, 8, 9 |
| 18 | U.S.S.G. §2K2.1(a)(1)(A)(i) | 8 |
| 19 | U.S.S.G. §2K2.1(a)(3)(A)(i) | 8 |
| 20 | U.S.S.G. §2K2.1(a)(4)(B)(i)(I) | 8 |
| 21 | U.S.S.G. §2K2.1(a)(4)(B)(ii)(III) | 8 |
| 22 | U.S.S.G. §2K2.1(a)(5) | passim |
| 23 | U.S.S.G. §2K2.1(a)(6)(c) | 8 |
| 24 | U.S.S.G. §2K2.1(b)(1) | 8 |
| 25 | U.S.S.G. § 2K2.1(b)(1)(5) | 2 |
| 26 | U.S.S.G. § 2K2.1(b)(1)(B) | 2 |
| 27 | U.S.S.G. §2K2.1(b)(2) | 8 |
| 28 | U.S.S.G. §2K2.1(b)(4) | 8 |

| | | |
|---|---|---|
| 1 | U.S.S.G. § 2K2.1(b)(4)(A) | 2 |
| 2 | U.S.S.G. §2K2.1(b)(5) | 1, 12, 13 |
| 3 | U.S.S.G. §2K2.1(b)(6)(A) | 8 |
| 4 | U.S.S.G. §2K2.1(b)(6)(B) | 8 |
| 5 | U.S.S.G. §2K2.1(b)(7) | 8 |
| 6 | U.S.S.G. §2K2.1(c)(1) | 8 |

**Regulations**

| | | |
|---|---|---|
| 28 C.F.R. § 0.130 | | 11 |

## I. INTRODUCTION

The defendant, Marlon Perez-Herrera, stands before the Court to be sentenced following pleading guilty to Counts Two and Seven of the Indictment, charging him with dealing firearms without a license and possession and transfer of a machinegun, in violation of 18 U.S.C. §§ 922(a)(1) and (o). The charges in this case emanate from defendant arranging multiple firearms transactions with an undercover agent, including the sale of machine guns. The United States recommends a sentence of 66 months, a three year term of supervised release that includes a suspicionless search clause, forfeiture of the firearms and ammunition in the case, and a mandatory special assessment of $200. Defendant's conduct is serious, and a sentence in excess of five years is warranted to account for his crimes.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The United States agrees with the factual and procedural background set forth in the Presentence Investigation Report ("PSR"). In summary, Mr. Perez-Herrera possessed and sold fourteen (14) firearms and accessories to an undercover agent on five dates between September 26 and October 29, 2018. He was acting as an arms dealer, and an effective one at that, with 14 firearms sold illegally into the community over a mere 33 day period, close to a firearm every other day on average. Defendant was paid $13,650 for the firearms he sold. The firearms defendant possessed and sold, represent a substantial arsenal of dangerous and illegal firearms and accessories, including:

- Seven machine guns (Four "Glock" auto switches sold on September 26 and October 29, and three more switches recovered during the execution of a search warrant on November 29, 2018);
- Three Glock semi-automatic firearms (which are convertible into automatic machine guns with the "Glock" auto switches he sold);
- Four assault rifles, including a Palmetto AR-style 556 x 45 caliber firearm classified as a short barreled rifle;
- Three additional hand guns; and
- Numerous extended magazines, including a 60 round drum magazine.

(PSR ¶¶ 14-28).

Defendant pled guilty by open plea to two counts in the indictment. He admits all of the conduct described here, in the PSR, and charged in the Indictment, and the government anticipates dismissing the remaining counts at sentencing.

### III. SENTENCING GUIDELINES CALCULATIONS

The government and the USPO agree that the following Guidelines calculations apply:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2K2.1(a)(5): (sale of multiple firearms described in 26 U.S.C. § 5845(a)) | | 18 |
| b. | Specific Offense Characteristics: U.S.S.G. § 2K2.1(b)(1)(B) (offense involved eight to twenty-four (8-24) firearms) | | +4 |
| c. | Specific Offense Characteristics U.S.S.G. § 2K2.1(b)(4)(A) (offense involved a stolen firearm) | | +2 |
| d. | Specific Offense Characteristics U.S.S.G. § 2K2.1(b)(1)(5) (defendant engaged in the trafficking of firearms) | | +4 |
| e. | Acceptance of Responsibility: U.S.S.G. 3E1.1 | | -3 |
| f. | Adjusted Offense Level: | | 25 |

(PSR ¶¶ 32-45).

Though defendant has a number of arrests, including two arrests while on pretrial supervision, for dangerous driving, and sexual assault of a minor, defendant has zero criminal history points, and therefore is criminal history category I. (PSR ¶¶ 46-53). Thus, defendant's Guidelines range is 57 to 71. (PSR ¶ 80).

### IV. LEGAL ARGUMENT REGARDING DEFENDANT'S OFFENSE LEVEL

**A. Defendant Possessed and Sold Multiple Firearms that Compel a Base Offense Level of 18 Pursuant to U.S.S.G. §2K2.1(a)(5).**

Section 2K2.1(a)(5) of the Sentencing Guidelines provides that Base Offense Level 18 applies "if the offense involved a firearm described in 26 U.S.C. § 5845(a)." U.S.S.G. §2K2.1(a)(5). Defendant disputes that he should be calculated as base offense level 18 as a result of the firearms that he trafficked. But a number of the firearms defendant sold are properly categorized as firearms covered by

26 U.S.C. § 5845(a). Though the Court only needs to find that one firearm qualifies as such a prohibited firearm, this section explains the plain language basis by which a number of the firearms defendant sold result in a base offense level of 18 points.

### 1. The Glock pistol and auto switch defendant sold together on October 29, 2018 constitute a firearm described in 26 U.S.C. § 5845(a).

In selling both a Glock firearm and a "Glock" auto switch during the same transaction, defendant sold his customer a machine gun, which carries with it a base offense level of 18 pursuant to U.S.S.G. §2K2.1(a)(5). A plain reading of 26 U.S.C. section 5845 compels this conclusion.

Section 5845(a) defines a firearm as follows:

> (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); _(6) a machinegun_; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

26 U.S.C. § 5845(a) (emphasis added).

Subsection (b) of 26 U.S.C. § 5845 then defines the multiple ways in which a firearm can constitute a machinegun, the final way which is applicable here. In its totality, section 5845(b) reads:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and _any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person_."

26 U.S.C. § 5845(b) (emphasis added).

Defendant cannot reasonably dispute that he possessed a combination of parts from which a machinegun can be assembled. He possessed both a Glock firearm and a "Glock" auto switch. Though

not assembled together, he sold these two items to his customer during the same transaction. He possessed them together, and sold them together, as part of the cache of firearms he sold his customer on October 29 for $5,700. Not that it is required for the base offense level to apply, but it is clear that defendant intended to sell the Glock firearm with the "Glock" auto switch. His text message to his customer said as much, stating: "All coming in the g26 comes with a switch they want 1550 that's the baby glock the rest of em 1250."[1]

A plain reading of the statute does not require that the parts be assembled. In fact, the opposite is the case, as the definition makes separate parts "from which a machinegun can be assembled" a machinegun, as long as those parts "are in the possession or under the control of a person."

Legislative history also reflects Congress's intent to regulate the possession of machineguns in all forms and permutations. Up until 1968, the 26 U.S.C. § 5845(b) definition of machine guns only referred to fully assembled weapons. *U.S. v. Evans*, 712 F.Supp. 1435, 1439 ("Prior to 1968, the statutory definition of 'machine gun,' i.e. 26 U.S.C. § 5845(b), referred only to fully assembled machine guns."). However, the Gun Control Act of 1968 expanded § 5845(b) so that it included "any combination of parts from which a machinegun can be assembled." Pub.L. 99–308, § 109(b), 100 Stat. 449, 460. The stated purpose for this 1968 amendment was "to help control the sale of incomplete machine gun conversion kits that now circumvent the prohibition on selling completed kits." *U.S. v. Goff*, 677 F.Supp. 1526, 1545 (D. Utah 1987) (citing H.Rep. No. 945, 99th Cong., 2d Sess. 28).

Perhaps in part because the plain language of section 5845 prohibits a person from simultaneously possessing a combination of parts from which a machine gun can be assembled, the Ninth Circuit does not appear to have considered whether such undisputed simultaneous possession of component parts constitutes a machinegun. But the Fourth Circuit addressed this question directly in *U.S. v. Griley*, when it held that the defendant possessed a "machinegun" within the meaning of § 5845(a) even though the machinegun was in two pieces. *U.S. v. Griley*, 814 F.2d 967, 975 (4th Cir. 1987). It is telling that the Ninth Circuit reached a similar conclusion with respect to whether or not

---

[1] *See* text message sent at 11:56:38 PM on October 28, 2018, the day before the sale, referenced on the page bates stamped MPH-000141 as part of the UC report for the October 29, 2018 transaction, which is attached as Attachment A to this memorandum.

U.S. SENTENCING MEMORANDUM
CR 18-0561 YGR                                              4

unassembled component parts of a silencer could meet the definition of a silencer, another prohibited weapon under section 5845(a), even though there was no "combination of parts" analog for silencers as there is for machineguns under section 5845(b). In *U.S. v. Endicott*, the Ninth Circuit held that a combination of component parts of a silencer met the definition of firearm in 26 U.S.C. § 5845(a), even though the description of silencers within the § 5845(a) definition of firearm did not include a "component parts" provision. *See U.S. v. Endicott*, 803 F.2d 506, 509 (9th Cir. 1986). The First Circuit reached the same conclusion regarding the same version of § 5845(a), when it held that the language of § 5845(a) covered unassembled silencers that could be readily and easily assembled. *See U.S. v. Luce*, 726 F. 2d 47, 48-49 (1st Cir. 1984). This case is even more straightforward, as 26 U.S.C. §5845(b) expressly considers "any combination of parts" as a part of the definition of a machinegun. 26 U.S.C. §5845(b).

This issue, of how to treat unassembled parts of a firearm in possession, has also been frequently raised in the context of 26 U.S.C. § 5841, which requires the registration of certain kinds of firearms. In *U.S. v. King*, 2004 WL 2453221 (9th Cir. 2004), *U.S. v. Kent*, 175 F. 3d 870 (11th Cir. 1999), *U.S. v. Zeidman*, 444 F.2d 1051 (7th Cir. 1971), and *U.S. v. Woods*, 560 F.2d 660, 664 (5th Cir. 1977), the Ninth, Eleventh, Seventh and Fifth Circuits all held that defendants, who stored unassembled pieces of rifles a short distance from each other, possessed a "firearm" under the NFA. In each of these cases, the courts found the fact that the weapons were unassembled was irrelevant because an illegal short-barreled rifle could be made in a short period of time and with minimal effort. *See Woods*, 560 F.2d at 665; *Kent*, 175 F.3d at 875; *Zeidman*, 444 F.2d at 1053; *King*, 2004 WL 2453221, at 3.

Accordingly, the Glock pistol and auto switch possessed by the defendant should be evaluated together. In combination, these two items meet the definition of both a § 5845(a) firearm and the definition of a § 921(a)(3) firearm.[2]

//

//

---

[2] Attached as Attachment B to this memorandum is an ATF Report of Technical Examination that confirms that the auto switch defendant sold on October 29 worked, as it enabled automatic fire by a semiautomatic Glock pistol after being installed on the Glock firearm.

## 2. The seven auto switches defendant possessed also meet the definition of "a firearm described in 26 U.S.C. § 5845(a)."

The government understands that defendant does not dispute that the seven auto switches (sometimes called "auto sears") he possessed are machineguns under section 5845(b) ("any part designed and intended . . . for use in converting a weapon into a machinegun") or firearms under section 5845(a). Rather, the government understands that defendant contends that the term "firearm" in §2K2.1(a)(5) incorporates the definition of firearm contained in U.S.S.G. §2K2.1 Commentary Note 1, which states that "'Firearm' has the meaning given that term in 18 U.S.C. § 921(a)(3)." U.S.S.G. §2K2.1, comment, n. 1. 18 U.S.C. § 921(a)(3) defines "firearm" as:

> "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."

18 U.S.C. § 921(a)(3).

Defendant argues that the auto switches he possessed must meet the definition of firearm in both 26 U.S.C. § 5845(a) and 18 U.S.C. § 921(a)(3) to qualify for a base offense level of 18 under U.S.S.G. §2K2.1(a)(5). He further argues that the auto switches do not constitute a firearm under 18 U.S.C. § 921(a)(3), and therefore the auto switches, by themselves, do not result in a base offense level of 18. Defendant misreads the Guidelines.

### (i) Defendant's interpretation of U.S.S.G. §2K2.1(a)(5) is inconsistent with the language and structure of the Guidelines.

U.S.S.G. §2K2.1(a)(5) states that the base offense level is 18 "if the offense involved a firearm described in 26 U.S.C. § 5845(a)." Because the seven auto switches all constitute "a firearm described in 26 U.S.C. § 5845(a)," the defendant should be classified as subject to Base Offense Level 18. A plain reading of U.S.S.G. §2K2.1(a)(5) compels such a result, and the Court need not address defendant's argument any further.

The Sentencing Guidelines are subject to the traditional rules of statutory interpretation. *See U.S. v. Cruz-Gramajo*, 570 F.3d 1162, 1167 (9th Cir. 2009). Under these rules, courts must begin with the language of the statute when interpreting one. *See Williams v. Taylor*, 529 U.S. 420, 431 (2000).

The statutory language is interpreted by reference "to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *U.S. v. Youssef*, 547 F.3d 1090, 1092 (9th Cir. 2008) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). The language and structure of U.S.S.G. §2K2.1 indicate that the Sentencing Commission defined the type of firearm that mandates a base offense level of 18 as on that is "described in 26 U.S.C. § 5845(a)." Put another way, section 2K2.1(a)(5) expressly modifies the term "firearm" with the phrase "as described in 26 U.S.C. § 5845(a)." The commission's language and intent is plain on its face.

The Supreme Court considered an analogous problem of statutory interpretation in *Burgess v. U.S.*, 128 S.Ct. 1572 (2008). The defendant in *Burgess* asserted that the definition of "felony drug offense" in 21 U.S.C. § 802(44) incorporated the definition of the term "felony" in 21 U.S.C. § 802(13), which defendant argued required the offense to have been classified as a State felony in addition to being punishable by imprisonment for more than one year. *Burgess*, 128 S.Ct. at 1577. The Court held that "felony drug offense" was defined exclusively by § 802(44), and the Court's reasoning suggests that this court should reach the same conclusion with respect to §2K2.1(a)(5). *Id.* at 1574.

In *Burgess*, the Court pointed out that Congress could have easily phrased the statute differently if it truly intended to incorporate the definition of "felony" into the definition of "felony drug offense." *Id.* at 1577. Similarly, in this case the Sentencing Commission could have written §2K2.1(a)(5) differently if it intended for the guideline to be interpreted in the manner asserted by the defendant. If the Commission wanted "a firearm as defined in 26 U.S.C. § 5845(a)" to incorporate the definition of a firearm in §2K2.1 Commentary Note 1, it easily could have written §2K2.1(a)(5) to state: "a firearm that *also* qualifies as a firearm in 26 U.S.C. § 5845(a)," or "a firearm as described in both 18 U.S.C. § 921(a)(3) and 26 U.S.C. § 5845(a)." The fact that the Commission elected not to use language that would have expressed the interpretation suggested by the defendant reflects that the Commission did not intend for this subsection to have such an interpretation.

The Court in *Burgess* also emphasized the fact that § 802(44) defined "felony drug offense" without any explicit reference to § 802(13). *Id.* Even though the term "felony" was independently defined in the same statute, the Court refused to incorporate its definition into § 802(44). *Id.* The Court reasoned, "[a]s a rule, [a] definition which declares what a term 'means' . . . excludes any meaning that

is not stated." *Id.* (quoting *Colautti v. Franklin*, 439 U.S. 379, 392-93 (1979)). Analogously, in this case § 2K2.1(a)(5) declares what firearm "means" by exclusive reference to the description of the term in § 5845(a).

The Supreme Court, in *Burgess*, also emphasized that § 802(13) would remain a useful definition even if it were not incorporated into the definition in § 802(44). *Id.* at 1589. The Court pointed out eight other provisions of the Controlled Substances Act in which the § 802(13) definition of "felony" served to define the "unadorned term." *Id.* U.S.S.G. §2K2.1 presents an identical scenario. The Government's reading of § 5845(a) as the exclusive definition of "firearm" in §2K2.1(a)(5) does not render the definition of firearm in §2K2.1 Commentary Note 1 extraneous. The term "firearm" appears twelve times without modification in §2K2.1. *See* U.S.S.G. §2K2.1(a)(1)(A)(i), (a)(3)(A)(i), (a)(4)(B)(i)(I), (a)(4)(B)(ii)(III), (a)(6)(c), (b)(1), (b)(2), (b)(4), (b)(6)(A), (b)(6)(B), (b)(7), and (c)(1). The Commentary Note provides a definition of "firearm" in those instances where the Commission did not otherwise explicitly set forth the applicability of section 5845(a) in defining firearm.

Furthermore, the lack of a logical relationship between the § 5845(a) definition of firearm and the definition of the same term in § 921(a)(3) makes it less likely that the Sentencing Commission intended for one definition to modify the other. For example, the defendant's interpretation might be plausible if the § 5845(a) definition reflected a more narrow scope of firearms than the § 921(a)(3) definition. In reality, §§ 921(a)(3) and 5845(a) offer parallel definitions of the same term. Section 5845(a) includes in its definition, shotguns and rifles with barrels less than a particular length, weapons made from shotguns or rifles that are less than a particular length, weapons capable of being concealed that discharge a shot through the energy of an explosive, machineguns, silencers, and explosive devices. 26 U.S.C. § 5845(a). On the other hand § 921(a)(3) includes weapons that expel projectiles by the action of an explosive, the frame or receiver of any such weapons, silencers, and explosive devices. 18 U.S.C. § 921(a)(3). There is no clear hierarchy between the definitions in these two sections that can explain why the Sentencing Commission would have intended for one section to modify the other. The definition of "firearm" in § 5845(a) is simultaneously more specific and broader than that in § 921(a)(3). For example, devices like the bump stock used in the 2017 Las Vegas massacre of 58 people, which convert semiautomatic weapons into fully automatic weapons, fall under the

§ 5845(a) definition of firearm, but not that in § 921(a)(3). 18 U.S.C. § 921(a)(3); 26 U.S.C. § 5845(a). However, a rifle with a barrel in excess of 16 inches, qualifies as a firearm under § 921(a)(3), because it expels a projectile by the action of an explosive, but not under § 5845(a), because its barrel is longer than 16 inches, it is not capable of being concealed, and cannot be readily restored into a machinegun. 18 U.S.C. § 921(a)(3); 26 U.S.C. § 5845(a).

Finally, in cases where the definition of a firearm was relevant to the court's decision, courts in other circuits have exclusively referenced the § 5845(a) definition of firearm when it modifies the term "firearm" in this section of the Guidelines.

The Fifth Circuit, in *U.S. v. Carmouche*, 138 F.3d 1014 (5th Cir. 1998), was called upon to determine whether a defendant was appropriately sentenced using guideline §2K2.1(a)(5). In reaching the decision that the defendant was properly classified, the court said "Carmouche was sentenced using guideline §2K2.1, the guideline applicable when the firearm is one defined by § 5845(a)." *U.S. v. Carmouche*, 138 F.3d 1014, 1016 (5th Cir. 1998). Not all firearms defined by § 5845(a) fall under the definition of firearm under § 921(a)(3), nonetheless the court identified §2K2.1(a)(5) as the appropriate guideline for Carmouche exclusively based on the fact that the firearm he possessed fell under the § 5845(a) definition. *Id.*

Courts have also had occasion to interpret the definition of firearm in §2K2.1 in a number of cases in which defendants asserted the existence of a scienter requirement. Among all such cases, the Government failed to locate a single one in which a court considered the § 921(a)(3) definition of firearm. *See e.g. U.S. v. Saavedra*, 523 F.3d 1287, 1288-89 (10th Cir. 2008); *U.S. v.* Fry, 51 F.3d 543, 546 (5th Cir. 1995); U*.S. v. Santillan*, 458 Fed. Appx. 253 (4th Cir. 2011); *U.S. v. Bryant*, 1997 WL 745828 (4th Cir. 1997). Implicit in the reasoning of all of these cases is the interpretation that a weapon is a firearm under §2K2.1(a)(5) as long as it satisfies the definition in § 5845(a). If §2K2.1(a)(5), or any other subsection with a reference to § 5845(a), also required a weapon to satisfy the definition of "firearm" in § 921(a)(3), one would expect cases discussing scienter requirements to also consider the requirements of § 921(a)(3). The absence of § 921(a)(3) from all §2K2.1 scienter cases is another fact that undermines the defendant's proposed interpretation of §2K2.1(a)(5).

### (ii) The defendant's interpretation of U.S.S.G. §2K2.1(a)(5) is also inconsistent with Congress's intent.

Even though it is not necessary to rely on legislative history to discern the meaning of the Guidelines where the plain meaning is evident, the legislative history reinforces the conclusion that the auto switches defendant possessed mandate a base offense level of 18.

Devices that convert an otherwise semiautomatic firearm into a fully automatic firearm have long been the subject of congressional scrutiny. The popularity of these devices grew considerably following the 1986 Firearm Owners Protection Act (FOPA), Public Law 99-308, 100 Stat. 449, which froze the supply of legally transferrable machineguns to those that were registered before the effective date of the statute. 18 U.S.C. § 922(o). Congress recognized the danger that these conversion devices posed to public safety, and accordingly included the phrase "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun" within the definition of "machinegun" when it codified 26 U.S.C. § 5845(b) in 1992. 26 U.S.C. § 5845(b) (1992).

The defendant, on the other hand, proffers an interpretation of §2K2.1(a)(5) which implies that the Sentencing Commission intended to treat machinegun conversion devices less seriously than the other types of firearms described in 26 U.S.C. § 5845(a). Not only does this interpretation run afoul of the natural reading of §2K2.1(a)(5), it also contradicts the increasingly serious treatment that these types of devices have received from Congress and the ATF. There is no evidence, other than the defendant's hyper technical reading of the Guideline, to suggest that the Sentencing Commission intended to create such a new distinction.

### 3. The defendant's Palmetto State Armory model PA-15 also meets the definition of "a firearm described in 26 U.S.C. § 5845(a)."

Even if the court were to accept the defendant's proposed interpretation of §2K2.1(a)(5) and require a weapon to meet both the definition of 18 U.S.C. § 921(a)(3) and 26 U.S.C. § 5845(a), the Palmetto PA-15 with an attached SBA3 brace satisfies both definitions of "firearm."[3]

---

[3] The Glock firearm sold in conjunction with the "Glock" auto switch, addressed above in section IV(A)(1), also meets both definitions of a firearm.

No one disputes that defendant's Palmetto PA-15 and SBA3 brace satisfy the 921(a)(3) definition of "firearm." The Palmetto PA-15 and SBA3 brace also constitute a short-barreled rifle, falling under the definition of "firearm" in 26 U.S.C. § 5845(a)(3). The Palmetto is a short-barreled rifle because its barrel is less than 16 inches and, when used with the SBA3 brace, is designed and intended to be fired from the shoulder. ATF Firearms Enforcement Officer David A. Smith evaluated the defendant's Palmetto PA-15 and SBA3 brace, and concluded that the SBA3 brace "exhibits the objective design characteristics of a stock/buttstock or shouldering device." Officer Smith based his conclusion on objective design features including, but not limited to: the type of firearm on which the brace is used, the length of pull to the end of the stabilizing brace when installed on the firearm, the design of the stabilizing brace, and how the brace functions.

The defendant's Palmetto PA-15 assault rifle and SBA3 brace were intended to be fired from the shoulder and have a barrel-length under 16 inches. Therefore, the Palmetto and the SBA3 brace meet the § 5845(a) definition of a short-barreled rifle.

"When Congress 'has explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.'" *U.S. v. Mead Corp.*, 533 U.S. 218, 228 (2001) (quoting *Chevron*, 467 U.S. at 843-44). In this case, ATF is acting pursuant to an explicit grant of authority from Congress, via the Attorney General, and its opinion about the classification of a weapon under § 5845(a)(3) is therefore entitled significant deference. 28 U.S.C. § 599(a) grants ATF the authority to investigate criminal and regulatory violations of federal firearms law at the direction of the Attorney General. 28 U.S.C. § 599(a). Under 28 C.F.R. § 0.130, the Attorney General provides ATF with the authority to investigate, administer, and enforce the laws related to firearms, under 26 U.S.C. Chapter 53 (National Firearms Act). 28 C.F.R. § 0.130. Pursuant to this statutory and regulatory authority, ATF evaluated the defendant's Palmetto PA-15 and SBA3 tactical brace, and concluded that the two together are a "firearm" as defined in 26 U.S.C. § 5845(a)(3).[4]

ATF has unique expertise and insight since it is tasked with enforcing and administering this statute. Accordingly, ATF's interpretation of firearm classifications is entitled to considerable

---

[4] *See* ATF Report of Technical Examination, at p. 5, which is attached as Attachment C to this memorandum.

U.S. SENTENCING MEMORANDUM
CR 18-0561 YGR        11

deference. *See Mead*, 533 U.S. at 227-28 ("considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer") (citations omitted).

ATF's interpretation also aligns with that of Ninth Circuit courts, which have consistently held that dissembled parts of a rifle, as defined in 26 U.S.C. § 5845(c), should be evaluated together. *See e.g. U.S. v. Schuhmann*, 1992 WL 107050, at 1 (9th Cir. 1992) (holding that an Uzi with a folding stock and pistol-like grip was designed and intended to be fired from the shoulder); *King*, 2004 WL 2453221, at 3 (holding that the possession of rifle uppers and lowers in close proximity constituted knowing possession of a rifle under 26 U.S.C. § 5845(c)). In *U.S. v. Kwan*, 2008 WL 4946277 (9th Cir. 2008), the Ninth Circuit spoke directly to the issue at hand when it observed that a pistol with a detachable shoulder stock "indisputably" would have become a "firearm" requiring registration, because they met the NFA definition of a short-barreled rifle. *See Kwan*, 2008 WL 4946277, at 1.

**B.    Defendant's Offense Conduct Warrants an Enhancement for Trafficking Pursuant to U.S.S.G. §2K2.1(b)(5).**

Defendant, who has pled guilty to trafficking firearms, apparently disputes a four point enhancement for trafficking firearms under U.S.S.G. §2K2.1(b)(5). Defendant admits to selling fourteen (14) firearms and numerous extended magazines for $13,650 across five deals over the course of only one month. They were clandestine deals designed to evade the detection of law enforcement and the lawful registration of firearms. Defendant relies on a Tenth Circuit case, *United States v. Francis*, 891 F.3d 888 (2018), for the proposition that a sale to an undercover agent cannot qualify as trafficking because the customer is not a felon. Defendant urges the Court to hold here that his trafficking activity should not result in a trafficking enhancement by virtue of a fortunate circumstance that he was unaware of, that his customer was a federal agent working to get dangerous weapons off the street, rather than the type of customer usually involved in illegal gun transactions. The Court should reject defendant's invitation.

First, the trafficking enhancement does not require that the sale be to a person who is actually a felon. In fact, the term felon is not referenced in the enhancement or the commentary note applicable to the enhancement. *See* U.S.S.G. §2K2.1(b)(5), Application Note 13. Rather, the enhancement applies on its face "if the defendant engaged in the trafficking of firearms," a crime to which defendant has pled

guilty. U.S.S.G. §2K2.1(b)(5). Application Note 13 speaks to the applicability of the enhancement in cases unlike this one, where defendant did not profit from his sales activity, noting that the enhancement applies, "regardless of whether anything of value was exchanged" under certain circumstances. But even if the circumstances referenced in Application Note 13 were applicable to this case, they are met. Application Note does not require the sale to be made to a convicted felon. The word felon does not appear in the application note. Instead the note says that the enhancement applies even where something of value has not been exchanged if the person providing the firearms to another person "knew or had reason to believe that [his] conduct would result in the transport, transfer, or disposal of a firearm to an individual—(I) whose possession or receipt would be unlawful; or (II) who intended to use or dispose of the firearm unlawfully.

Application Note 13's applicability thus stems from the perspective of the defendant, not from the technical felony status of the person to whom he transfers the firearm(s). The enhancement applies when the defendant either "knew or hade reason to believe" that his customer, or his customer's customer, could not lawfully possess the firearm. In this case, not only did defendant sell an arsenal of firearms, but it is undisputed that some of the firearms he sold were machineguns, which cannot be lawfully possessed by anyone. Maybe felony status could bear some relevance in a case not involving machineguns in which the customer was not a felon or otherwise prohibited and had a lawful right to possess a firearm. But that cannot be the case here, where defendant possessed and sold illegal machineguns.

## V. STATUTORY SENTENCING FACTORS

### A. Nature and Circumstances of the Offense

The nature and circumstances of the offense are very troubling. Defendant engaged in firearms trafficking. He sold a gruesome collection of firearms and high capacity magazines, including four machineguns, semiautomatic Glock firearms that could be converted into machineguns by the auto switches, and numerous other firearms, including a variety of assault rifles and high capacity magazines. Moreover, defendant's conduct occurred in just over a month's time. Defendant's firearms trafficking was extensive, and lucrative, by any definition. His conduct cannot be understated, and by itself, his conduct merits at least a five year sentence.

### B. History and Characteristics of the Defendant

The government acknowledges that defendant has never been convicted of a crime before, and that as a result his criminal history is lighter than the bulk of persons prosecuted in this District. But two factors mitigate against any sentence below five years. First, the Guidelines already account for his lack of criminal history. For comparison sake, had defendant engaged in the same conduct after suffering a single conviction, even a misdemeanor conviction acquiring two criminal history points and a probation term that accounted for an additional two criminal history points, defendant would be criminal history category III, and subject to a Guidelines sentence of 70 to 87 months. The Guidelines sentence defendant faces is a sentence that is already derivative of his own conduct and his lack of a prior conviction.

Second, the Court should consider defendant's actions while on pretrial release in considering the appropriate sentence here. Defendant suffered two arrests while on supervision. The first was for driving, with a suspended license, in excess of 100 miles per hour on slick roads, swerving across several lanes and almost colliding with another vehicle. Much more disturbing is defendant's arrest for sexual assault. (PSR ¶¶ 4 and 51). Those details will not be repeated here, but they do not weigh in defendant's favor at sentencing.

A sentence of five years constitutes the bear minimum required under the circumstances.

### C. Need to Reflect the Seriousness of the Offense and Deterrence of Criminal Conduct.

The government's requested sentence of 66 months reflects a mid-range sentence. It is not overly punitive, and by imposing a sentence of more than five years the Court will be sending a message that this defendant's conduct is not at the lower end of the spectrum of trafficking cases. Defendants engaged in far less extensive trafficking activities frequently face longer sentences than the one defendant faces in this case. A sentence of 66 months reflects the seriousness of the offenses and should deter defendant's future criminal conduct. Such a sentence balances defendant's concerning crimes against his modest criminal history until recent times.

### D. Need to Protect the Public

The public needs to be protected from persons who unlawfully sell firearms of the nature and quantity sold by defendant, seemingly without compunction.

1  **VI.   CONCLUSION AND SENTENCING RECOMMENDATION**

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to a 66-month term of imprisonment, a three-year term of supervised release, no fine, forfeiture of the firearms, ammunition and accessories, and a $200 special assessment.

In light of the defendant's criminal history and the nature of his offense, the government also recommends that the Court impose the following expanded search condition:

> The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

Given the defendant's conduct and recent failure to comply with the conditions of his supervision, the requested conditions are necessary to protect the public and serve the interests of deterrence and rehabilitation.

DATED: October 4, 2019                    Respectfully submitted,

                                                            DAVID L. ANDERSON
                                                            United States Attorney

                                                            /s/
                                                            THOMAS R. GREEN
                                                            Assistant United States Attorney